Ernest Lee IRVAN, Plaintiff-Appellee,

v.

**FROZEN FOOD EXPRESS, INC.,** Defendant-Appellant.

No. 85–2063.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1986.

---

Atchley, Russell, Waldrop & Hlavinka, Victor Hlavinka, Alan D. Harrel, Texarkana, Tex., for defendant-appellant.

Young, Patton & Folsom, Nicholas H. Patton, Hubbard, Patton, Peek, Haltom & Roberts, William G. Bullock, Texarkana, Tex., for plaintiff-appellee.

Before POLITZ, HIGGINBOTHAM and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In a case arising from a back injury, an East Texas jury awarded this plaintiff $400,000 against his employer, a non-subscriber to workman's compensation. Persuaded that the employer was denied a fair trial by the employee's exploitation of the firm's non-subscriber status and by the receipt into evidence of irrelevant claims by other employees against the company, we reverse and remand for a new trial.

## I

Ernest Lee Irvan hurt his back while lifting pallets as he loaded his truck at the Dallas dock of Frozen Food Express. At trial, Frozen Food stipulated that it was a self-insurer and that Irvan was its employee. It followed from this that the plaintiff needed only to prove that the company's negligence caused his injury—no common law defenses were available. *See* Tex.Rev. Civ.Stat.Ann. art. 8306 § 1 (Vernon 1967). Irvan contended that Frozen Food was negligent in not maintaining a safe place to work, in not providing adequate assistance or proper tools, and in not giving proper safety instructions. Whether Frozen Food was guilty of any act of negligence was hotly disputed and would present a close question on the record before us. Our discussion will focus on two errors that require us to remand for a new trial: the admission into evidence of a record of some 250 unrelated industrial accident claims and the plaintiff's exploitation of Frozen Food's non-insured status.

## II

After an opening argument in which he stressed the role of the workman's compensation scheme in Texas, Irvan's lawyer began by calling an adverse witness: Alvin Rhyer, an employee of Frozen Food with responsibility for safety and for the handling of accident claims. His first series of questions to Rhyer was directed to defendant's non-subscriber status, and the first exhibit he offered into evidence was one of Frozen Food's last workman's compensation policies. After the defendant's objection to this line of questioning was sustained, Irvan's counsel marked as an exhibit a certified copy of a computer print-out from the Texas Industrial Accident Board and confronted Rhyer with the following question:

> Can you explain to this Jury why, between January 1, 1979 and March 1, 1981, two hundred and fifty (250) claims were filed for on the job injuries with the Texas Industrial Accident Board, relating to Frozen Food Express?

Thereafter, over Frozen Food's objection, these claims were waved before the jury with virtually no explanation as to where or in what circumstances they arose. The receipt of this evidence was itself plainly irrelevant and highly prejudicial, but it delivered an especially potent sting as a component of Irvan's basic trial strategy, which was to exploit Frozen Food's non-subscriber status.

## III

Under Texas law, Frozen Food had the legal right to choose to be self-insured. That circumstance was not relevant to any contested issue in the case. Because workman's compensation schemes are pervasive and familiar, it was doubtlessly proper to let the jury know why Irvan was able to sue his employer instead of being confined to the remedies of the statutory compensa-

tion mechanism. *See, e.g., Scottino v. Ledbetter,* 56 S.W.2d 282 (Tex.Civ.App.—Dallas 1933, no writ). But that is not what happened. In closing argument, plaintiff's counsel wasted no time:

> MR. PATTON: May it please The Court, Mr. Hlavinka, Ladies and Gentlemen: This has been a rather short case at that. Of course I know and in no one's mind lessens the importance of what we are dealing with here today. And truly what we are talking about here today, Ladies and Gentlemen, is one day out of this year and this one day out of E.L. Irvan's life that we are talking about his future. And while I don't have any intentions of trying to invoke passion or prejudice or sympathy or bias or any of those kinds of things into a lawsuit, I cannot stress to you enough the importance of this event for Mr. Irvan. Trials in California like this would last six (6) weeks. I think because we have got better lawyers and better judges around here, that we can condense them down to much shorter time and, hopefully, get in all of the information that you need. But we are streamlined in this courtroom just as Frozen Food Express is streamlined over there on their loading dock. And what is involved here, Ladies and Gentlemen, is a pretty basic right of the working man in a free and deliberate choice by a company to cut off that right and acknowledging that they are willing to suffer the consequence for it. Because that is what we are dealing with. The reason that almost all employers carry workman's comp is two-fold. First, there is a desire to protect and compensate in a reasonable fashion, injured employees, and that is the reason for the law. Because we all recognize that working people don't have a lot of choices about the way they do their jobs. You do your job according to the demands of what your boss tells you. And people get killed and injured every day, not because they did something wrong, but because of the nature of the job that they are required to undertake.

> Now the bottom line, Ladies and Gentlemen, unfortunately, of almost everything that goes on in our society these days, is money. There was a clear and conscious effort on a company that had protected their employees with workman's compensation insurance for thirty some odd years, to cancel that and, as we lawyers call it, "go bare." In other words, hope that nothing happens that you are going to get penalized for. And here is a reason, on the next to the last insurance policy, and you heard me read Mr. Weller's testimony—

> MR. HLAVINKA: Excuse me, if Your Honor please, I think Counsel is purposefully discussing matters that don't relate to the issues in this case and matters which are—have to do with the relative financial position of the parties to instill passion and it's improper and I object.

> THE COURT: The Court doesn't construe the argument in the light in which Counsel is construing it. We will overrule the objection.

> MR. PATTON: And that is to avoid paying an eight hundred and forty-one thousand dollar ($841,000.00) insurance premium, a conscious business decision that involves cash flow at the expense of injured employees and not just Mr. Irvan, Ladies and Gentlemen. As you have seen from the workman's comp records, two hundred and fifty (250) injured employees in a two (2) year period.

> What we are talking about, folks, is right and wrong, and that is basically what the law almost always boils down to, what is right and what is wrong. The right thing to do is to carry the compensation insurance and to pay your employees when they get injured.

> MR. HLAVINKA: Excuse me, Your Honor, Counse[l] is—

> MR. PATTON: I am moving on, Your Honor.

> MR. HLAVINKA: Counsel is arguing to the Jury that something that this party has a right to do and that is to be a non-subscriber, is somehow legally or morally wrong.

> THE COURT: You will have an opportunity for your time, Mr. Hlavinka, and you

can certainly tell the Jury that. Objection overruled.

MR. PATTON: The point I am trying to make, Ladies and Gentlemen, and let's do just put this on a cold clear business basis and I will make no comments of the morality of this, but I will say this, Judge Fisher is going to instruct you that when you, as an employer, elect not to carry workman's comp insurance, you give up all of your defenses to common law defenses to a negligent action against you. And all that has to be proved is that some act of negligence occurred on the part of Frozen Food Express. Now everybody tells you from Frozen Food Express that this is such a safe operation, no problems at all and yet the one witness who tried to pick one of these things up, it went all the way over the top of his head and, frankly, I thought he was going to tumble back into the witness chair. Working men should not be required to do this. And when they are, and they get hurt, somebody ought to pay them and Frozen Food is the one, you heard it, who is responsible for setting forth the requirements that these drivers have to meet. Frozen Food Express is responsible for this.

■ This argument was a conscious and deliberate appeal to the prejudice and passion of the jury: the jurors were asked to judge this case, not on the basis of whether the defendant was negligent, but on the basis of their disapproval of the company's exercise of its legal right to be a self-insurer. The prejudicial effect of this argument was compounded by the admission into evidence of the irrelevant computer printouts of unrelated accident claims. In what we would have viewed as a close case on the merits, the jury left the courtroom at 4:25 p.m. and returned eighteen minutes later with its $400,000 verdict.

We cannot escape the conclusion that the plaintiff's improper appeal to prejudice and passion—that to escape a premium of $841,000 Frozen Food was running from the claims of hundreds of workers—was successful. We only read the cold words of the transcript, bereft of the flesh and drama of the trial. For that reason, as well as for reasons of institutional order and constitutional right, we do not lightly vacate a jury award. We must, however, meet our own responsibility to make the call when counsel strikes a foul blow. The defendant did not get a fair trial, and it deserves another chance.

REVERSED and REMANDED for a new trial.